**Robert MOORE, Appellant,**

**v.**

**Jack McKAY, d/b/a Lost Pines Lumber Co., Appellee.**

**No. 11661.**

Court of Civil Appeals of Texas.

Austin.

March 26, 1969.

Rehearing Denied April 16, 1969.

Joseph Latting, Austin, for appellant.

James W. Townsend, J. C. Hinsley, Austin, for appellee.

HUGHES, Justice.

Robert Moore, appellant, sued Jack McKay, doing business as Lost Pines Lumber Company, for damages for allegedly breaching an alleged contract.

The substance of the contract alleged was that appellant was the owner of two houses in Bastrop, Texas, which were encumbered by conventional liens and also by a judgment lien against appellant and in favor of appellee for about $4,300.00, and that he, appellant, proposed that if appellee would release its judgment lien he would "actively seek to arrange a sale" of the smaller house on Pecan Street for $5,000.00 out of which he would pay the mortgage debt against such house, bring the mortgage debt on the larger Main Street house up to date by paying delinquent installments and giving appellee $1,700.00 to apply on his judgment against appellant, and that appellee accepted this proposal.

Trial was to a jury which made these findings: (1) appellant and Mrs. Brinkmeyer, an employee of appellee, entered into an agreement for the release of the judgment lien on appellant's property (2) that this agreement was and we quote from special issue 2:

"Mrs. Brinkmeyer agreed that the Lost Pines Lumber Company would release its judgment lien on the Pecan Street and Main Street properties and Mr. Moore agreed to take an active part in effecting the sale of one or both of such properties; further it was mutually agreed that upon the sale of the Pecan Street property for a price of at least $5,000.00 the proceeds of the sale would be divided as follows: Mr. Moore's mortgage indebtedness on the Pecan Street property to Smithville Savings & Loan—approximately $2,700.00—would be retired; as much of the proceeds as necessary—approximately $600.00—would be paid to Smithville Savings and Loan to bring the mortgage on the property at 703 Main Street up to date; the remainder of the proceeds, approximately $1,700.00, would be paid to Lost Pines Lumber Company."

(3) that Mrs. Brinkmeyer had apparent authority to make this agreement for appellee (4) that Mrs. Brinkmeyer did not have actual authority from appellee to make this agreement (5) that appellant would have prevented foreclosure of the mortgage lien on the Pecan Street house if appellee had released his judgment lien (6) a finding similar to (5) was made as to the Main Street house (7) that one T. C. DeShay would have purchased the Pecan Street house for $5,000.00 but for the existence of appellee's judgment lien (8) the reasonable cash market value of the Pecan Street house on March 1, 1966 was $5,000.00 (9) a similar inquiry as to the Main Street house was answered "$18,000.00." (10–12) that appellant did not fail to find and produce a

purchaser who was ready, willing and had the financial ability to purchase the Pecan Street house for $5,000.00 but for the judgment lien. We copy the last two issues, 13 and 14, and their answers:

"SPECIAL ISSUE NO. 13: Do you find from a preponderance of the evidence that the Plaintiff, Robert Moore, failed to take an active part in attempting to arrange for the sale of the property at 307 Pecan Street in Bastrop, Texas?

Answer 'He did fail' or 'He did not fail.'

ANSWER: *HE DID FAIL.*

SPECIAL ISSUE NO. 14: Do you find from a preponderance of the evidence that the Plaintiff, Robert Moore, failed to take an active part in attempting to arrange for the sale of the property at 703 Main Street in Bastrop, Texas.

Answer 'He did fail' or 'He did not fail.'

ANSWER: *HE DID FAIL.*"

Judgment on this verdict was rendered that appellant take nothing by his suit.

It is our opinion that the answer of the jury to special issue 13 is supported by the evidence and that appellant's points to the effect that there is no evidence to support jury answers to special issues 13 and 14 and that such issues and answer constitute no defense to his suit and that judgment should have been rendered for him on the verdict should be and they are overruled.

Mr. Jack McKay was the part owner of a lumber business operating under the name of Lost Pines Lumber Company in Bastrop, Texas. The lumber company was managed by Mr. Willie J. Brinkmeyer. His wife, Mrs. Barbara Brinkmeyer, was bookkeeper and assisted in operating the business. They had been so employed for seventeen years. Appellant, a building contractor, had done business with Lost Pines and he was well acquainted with the Brinkmeyers.

He did not know Mr. McKay who lived in Austin and who did not in person operate the business in Bastrop.

Appellant suffered financial reverses in the early nineteen sixties and being unable to pay his account with Lost Pines suffered a judgment in its favor for $4,247.07 in November 1965. This judgment hampered appellant in his business and he undertook to have it released.

He talked with the Brinkmeyers about his problem, and Mrs. Brinkmeyer sent him to Austin to see the attorney who had represented Lost Pines in securing the judgment against him. Early in January 1966, appellant went to Austin to see the attorney who sent him to see Mr. McKay. According to appellant, Mr. McKay told him to deal with Mrs. Brinkmeyer and that whatever she did would be all right with him. Mr. McKay denied this testimony and testified that he told appellant that he would release the judgment only upon its payment.

Upon returning to Bastrop from Austin appellant talked with the Brinkmeyers telling them of his version of the talk with Mr. McKay. The result was that the agreement sued on was allegedly made.

On January 19, 1966, the attorney in Austin to whom appellant had been sent by Mrs. Brinkmeyer wrote her a letter addressed to Lost Pines Lumber Company, a portion of which we quote:

"Dear Mrs. Brinkmeyer:
I am still awaiting a copy of the description of the land which Mr. Moore is attempting to sell so that I can execute a partial release to be signed and filed of record by the Lost Pines Lumber Company releasing its judgment pro rata to the amount to be received from Mr. Moore by the sale.

When I receive this description material, then I shall be able to draw the release and forward the release to the loan company; consequently, please let me know which loan company the matter will be handled through (or title company), and

the amount of consideration to be paid to the Lost Pines Lumber Company for the partial release."

On the top border of this letter is written in ink "Bob, please send him the description." This was written by Mrs. Brinkmeyer and mailed by her to appellant. Appellant took the description of the property to the attorney in Austin who according to appellant stated that he did not need the legal description to release the judgment.

In December 1965, and in January and February, appellant talked with Mr. T. C. DeShay about the Pecan Street house. Mr. DeShay testified that he told appellant that he wanted to buy the place and would pay $5,000.00 for it. Not having the money to pay for the place, Mr. DeShay went to the loan company holding the mortgage lien on the place. There he was informed that he could not obtain a loan on the property until the judgment lien held by appellee was removed. Mr. DeShay made no formal application for a loan. Realizing that he needed some cash in addition to a conventional loan, Mr. DeShay discussed the matter with his banker and was assured by him that a loan for the down payment could be obtained. If the down payment required exceeded the $999.00 limit the bank stated it would lend him, Mr. DeShay testified that he would have asked his uncle, W. A. DeShay to sign his note and, if necessary, to put up collateral. Mr. W. A. DeShay was not approached on this matter at the time but he testified on the trial that he would have signed the note and furnished collateral if he had been requested to do so.

No written contract of sale was ever made by appellant, the owner, and Mr. DeShay, the prospective purchaser.

There is no evidence that appellant found anyone interested in buying the Main Street property.

The Pecan Street house and the Main Street house were both sold at a trustees' sale on March 1, 1966, for amounts not exceeding the indebtedness for the nonpayment of which the foreclosure sales were made.

There is no evidence that appellee benefited from these foreclosure sales.

From the evidence we are asked to hold that, as a matter of law, appellant "took an active part in effecting the sale of one or both of such properties" as the agreement was found to provide in special issue 2 or that he did not fail "to take an active part in attempting to arrange for the sale of the property at 307 Pecan Street," the affirmative of which was found by the jury in answering special issue 13.

There is no point before us complaining of any discrepancy between special issues 2 and 13. For this reason, we have interpreted special issue 13 in the light of the agreement found and spelled out in issue 2. Obviously, it would have been of no benefit to appellee for appellant to "attempt" to arrange for the sale of the Pecan Street property unless the "attempt" was successful. It would have been rather imprudent for appellee to agree to release his judgment lien in the event appellant made such attempt but that it failed. The true agreement as found by the jury and concerning which finding no complaint is made is that appellant was obligated to "take an active part in effecting the sale" of one or both of the properties involved.

There is no evidence that a sale of the Pecan Street property was effected. There is no evidence sufficient to constitute a parol sale. There is no evidence that a proper deed had been executed, delivered and accepted. There is no evidence that a legally binding and enforceable written contract of sale had been executed by the seller and the purchaser.

Since there is no evidence that appellant has performed his obligation under the agreement made with appellee, the obligation of appellee to release his judgment as to the property sold upon the terms stated in the agreement never arose.

The testimony of Mr. T. C. DeShay that he was willing to buy the Pecan Street property and the financial aid promised by his uncle and the banker, while no doubt made in the utmost good faith, are not sufficient to support a conclusive finding that appellant took "an active part in effecting the sale" of the Pecan Street house.

The judgment of the trial court is affirmed.

Affirmed.